I don't have a whole lot to say. I'm sure you're all quite familiar with our rules of the road on oral argument. We ask you to, since in one case we have three lawyers arguing on a side, try to observe the time limits. We have read the briefs and record excerpts. We have not necessarily read the whole record before we get into court, so we appreciate your record citations. First case of the morning is United States v. Moss, No. 16-30561, and we'll hear from Ms. Greenfield to begin. You're identified as an AUSA. Are you from New Orleans? Yes, off the street. I'm 11 years now. May it please the Court, I'm Emily Greenfield, and I represent the United States in this case. As alleged in the indictment, Curtis Danton and Grand Isle Shipyards, Don Moss, and Chris Schuber, knowingly and willfully failed to comply with the welding regulations governing the work they were performing for Black Elk Energy, the lessee of the offshore facility known as West Delta 32. Each of them were charged, along with Black Elk Energy, under the Oxley Criminal Statute. The District Court's dismissal of the charges against Danton, Grand Isle, Moss, and Schuber pursuant to Rule 12 was an error based on the plain text of Oxley and the regulations. Interior has the authority to write regulations. The plain text of the regulation doesn't exclude contractors from the definition of you? I don't see how you'd get around that. You, Your Honor, whether we require contractors to comply with the regulations under a term of you, as in 250.105, or whether they have the compliance under 250.146, where they are, the regulations require their compliance. It doesn't matter which category they are put in. You has been a way that Interior has been able to, without specifically listing each entity that needs to comply with each and all of its regulations, that it captures all of those operators and lessees that are responsible for all the regulations. Well, operator and lessee are terms of art in the oil and gas business, and they don't include welding subcontractors. Correct. That is true. But the defendants are not responsible for everything that the lessees and the operators are across the board for all the regulations. As 250.146c requires, when they are doing the work that is regulated, then per that regulation, they are required to comply jointly and severally with the lessee and the operator. Where does it say that they have to comply? I know the district court's opinion seems to say that at one point, but the defendants don't agree with that, even though the opinion sort of says they have to comply, but they can't be liable. Where does it say they have to comply? That is in 250.146c, and in fact, the defendants below in some of their briefings... What does it specifically say that says that they have to comply in that provision? Yes. Under c, when the regulations require the lessee to meet a requirement or perform an action, the lessee, operator, if one has been designated, and the person actually performing the activity to which the requirement applies are jointly and severally responsible for complying with the regulation. So it's literally within 250.146. And again... Responsible for complying with the regulation. With the regulation. So whenever the regulations in the 30 CFR, in the different parts of 250 through 282, it sets out what the regulations require the lessee to make a... Let me, well, why don't you have a chance to start your argument, and then I have some questions. Sure. Again, just picking up, we believe the plain text of Interior's regulations not only require lessees and operators to comply with those operational regulations, but also demands that any person performing that regulated activity, like we just said, on behalf of the lessee, must comply with the regulations governing their work. And then OCSLA's criminal provision makes any person who knowingly and in the environment conserve natural resources subject to criminal prosecution. Now let's go to the Jewell opinion. Judge Doherty's opinion. Oh, island operating? Yeah. And consider the statute, which starts off by defining a person, and then in 1334A says the secretary shall administer the provisions of this subchapter relating to the leasing. And then when you get a little more detailed, it does say there in the enforcement of safety laws the secretary shall cooperate with relevant departments. And then in 1348 it says the duty of any holder of a lease or permit to maintain, you know, safety and environmental laws. Now, basically, you're going beyond. You're saying that the secretary's ability to administer and your ability to prosecute people goes beyond the scope of 1334. No. One of the things that the island operating opinion did was not cite to the provision in the middle of the two sections that you just cited. The secretary may at any time prescribe and amend such rules and regulations as he determines to be necessary and proper to provide for the prevention of waste, conservation of natural resources. I'm aware of that. And the next sentence talks about in the enforcement of safety and conservation safety regulations. Is that what you're referring to? No. The sentence goes on that, again, the secretary is allowed to, and since 1953 this has been the case, that Interior has been allowed to write and enforce regulations for the protection of the environment for all the operations under the lease, notwithstanding any other provision in OXLA. The welding regulations were promulgated under this section, and it does not restrict Interior's authority to require compliance by any other person performing that actual operation, that notwithstanding How come the Interior Department just realized this after decades of saying that it didn't apply, that they weren't going to prosecute subcontractors? They have not said that they were never going to prosecute contractors. So every contractor has been on notice for 30 or 40 or 50 years that if the welding regulations were violated they could go to jail? Every person that performs operations in the Outer Continental Shelf that is subject to a regulation has been aware pursuant to that. I mean, normally join in several liability, which is the regulation you're referring to is a civil provision, not a criminal provision, because you do not have, I'm not aware, other than conspiracy of joint or people who are personally involved, the idea of joint and several liability has no purchase in the criminal law, does it? This is joint and several responsibility. Joint and several liability, that's a common legal phrase. The 1348 would require, getting back to what you were saying earlier about what does 1348 do, it's going to require that the operators and the lessees, the lessees and the permit holders actually, maintain all their operations. So Interior would not say to a lessee or permit holder, you're required. Two people can be responsible for violating a criminal provision. That happens all the time. But you, well, I made my point. Joint and several liability is the term in the civil law, not in the criminal law. And Your Honor, the criminal statute in this case says that any person may be Right. So let's take an example, okay? Suppose these, you know, Mr. Danton and Mr. Schruber, one of them wasn't even out on site when this occurred, right? They were all on the platform. Okay, they were on the site. Okay, all right, thank you. But suppose one of their supervisors had a phone call with them that day and neglected to discuss, well, did you, you know, did you seal off this area? Did you seal off the ambient gases before you, or did you put notice or inspect and so on? Would they be, would that person be criminally, jointly and severally liable? I'd have to go on the facts of that case. Well, excuse me. The point is that under the, under the negligence law, that is certainly possible, right? But it would not necessarily be a knowing and willful criminal violation, you know, anyway. Right, the fact, I would have to prove knowing and willful violation for the regulation violation in this case, right? And again, since 1953, any person that is performing a regulation, any person that knowingly and willfully violates a regulation designed to protect health, safety and the environment has been subject to notice that they can be prosecuted. Has anyone actually been prosecuted? You have some New York Times article and are you, and you have some criticisms of the law review piece that the district court cites that says no one's prosecuted. Are you not, are you criticizing that the court used the law review article or are you saying that it's not true, that it has, that no one's been prosecuted? What is your actual statement about that? I think that the law review article would be, you know, controlling authority, but in terms of who has been prosecuted, yes. In 1989, and I actually have the plea agreement, in 1989. But you didn't have it with you before, did you? Yes, I've never submitted it into the record. Of course, we could supplement with this course. We can't rely on it now at the 13th hour if you didn't have it in the record before, can you? We've always cited it. I was reading from it in the district court below, and that's in the record of the hearing, but yes. So there's one incident in the 60 years? Or how many are there? Yeah, Oakslip has a long history, 60 years. And in 1989, after the 1978 amendment, the C-regulation, which made the joint and solid responsibility. Is that Texaco? Helmer Campaign International, yes, with Texaco. That's the one. That's the one with the contractor for the Department of Justice. Of all the whole history, when we've had welders on platforms for an unfortunate incidence for years and years and years. Correct. That was a plea, right? That was a plea after an indictment, yes. And, of course, since that time, since this case in 2012, we have brought cases against contractors here. Obviously, it doesn't predate 2012, but the cases have been brought and we have prosecuted them. But until 2010 or 2011, the public information doled out by the agency was that you were not going to prosecute such individuals. No, it was not the enforcement strategy, but a change in enforcement doesn't mean that the criminal statute wasn't valid. Well, when it's post hoc, there are questions of due process notice. Again, the criminal statute has been on the books since 1953. The interiors regulation has been in existence since 1953. Let me ask you another question. You're talking about 1334A, which talks about rules and regulations and the secretary shall administer the provisions and then has the other language that we've got here that says, the regulations under this subsection will include but not be limited to provisions for the suspension or temporary, and I'm looking at subsection one, for the suspension or temporary prohibition of any operation or activity if there is a threat of serious irreparable harm or damage. And then, with respect to subsection two, is cancellation of lease or permit. Subsection three, the assignment or relinquishment of a lease. Subsection four, unitization, pooling and drilling agreements. Subsection five, subsurface storage of oil and gas. Subsection six, drilling or easements necessary for exploration. Subsection seven, prompt and efficient exploration and development. Subsection eight, compliance with the Clean Air Act. Are you familiar with the principle Aes Deme Ganaris in statutory interpretation? Your Honor, I... That means of a like kind, when you have a list in a statute or regulation or whatever that then the terms include but not be limited to can be possibly, and I didn't look this up completely before I came here today, but it occurred to me that under the principle, if that principle applies here, you are not talking about regulations that go to liability of people other than the leaseholder or operator, period. Well, then the criminal statute doesn't work then in that, in this case. Of course it works. Why doesn't it work? Black Elk, Black Elk, Black Elk is still down there, right? Right, but it's expansive. It doesn't get much plainer than a criminal statute that says any person who knowingly and willfully violates a regulation that protects health, safety and the environment may be prosecuted. And you can't get much plainer than a regulation that spells out before welding, you have to conduct a pre-work inspection, you have to render your piping inert, and you have to make sure it's safe. And it's logical and just and plain that those who perform that activity are actually held responsible when they fail to conform with the regulation. All right, thank you. Okay, Mr. Rosenberg. Good morning, Your Honor. Two judges in two separate districts rejected the government's contorted arguments that the government now has this court to embrace in order to pursue an unlawful enforcement action. And while I'm at it, let me just say it's an enforcement action, and yet the government doesn't even mention Section 1348 of the Act, which is titled enforcement. It just bypasses that. It makes it a statutory orphan in terms of what it discusses. That's not pure textual application we respectfully submit to this Court. You've got to apply the language of the text. The government, once again, offers the Court, as it did the District Court, sort of a hopscotch argument of regulations, acts, whatever snippets it can provide. But frankly, Your Honor, it's simple. Criminal liability against contractors is not supported by the Act, by the regs, by the legislative history, or even by the Department of Interior's own pronouncements repeatedly made to the public. The argument they're making here seems to be hung up on the any person reference. Your Honor, Judge Clement, any person is under 1350. And once again, in the government's effort to just sort of grab portions of statutes out of context, 1350, as this Court knows, relates to fines and penalties. The 1348 is the enforcement provision, and 1348 is the predicate to get to 1350. It is much broader. Any person certainly could be prosecuted if they fall within 1348. And as the Chief just noted a moment ago, that that applies to holders of permits, holders of leases, not contractors. Now, the government, frankly, its approach is inconsistent with both the meaning and the structure of the statute. And it offers what it does is it offers this Court an opportunity to basically replace the legislature, replace Congress with the executive branch's decisions at a whim, without any notice given to the legislature. Your Honor, there is a reply brief on page 17 that says, because the Oxlade did not contain any version of 1348B, that no one had any duties prior to that provision being passed. Can you address that? Sure, Judge Elrod. I mean, frankly, the statute was established by Congress, of course, and if Congress wanted to put that enforcement provision in as it did later, then it could do so. Frankly, there are no cases that I could locate that actually weren't enforcement actions. There wasn't an enforcement provision. And that's, I didn't mean to interrupt, Your Honor, and that's correct. So when 1348 was enacted, at the same time 1350 was enacted, that had the fines and penalties, that was a Congressional decision made in 1976. And that's what actually, I mean, that's what actually instilled the enforcement provision. So this language about whether they had enforcement actions or not before 1976 is just a, it's a red whale. It's more than a red herring. And frankly, to answer the Court's question about the prior prosecution, Judge Elrod, that was a plea agreement, as Judge Clement noted, and it was a blurb. It's not even a reporting decision the government can find. And it was in 1989, before Bessie announced, we do not govern contractors, our focus is on the holders of permits and holders of leases. That's Bessie's own words. And to make it clear, they not only put it in bold, they basically screamed it out to the public, saying, you don't have to worry about this, contractors, because we're not focused on you, we're focused on the permittees and the lessees. And they couldn't have been clearer. And that was in 2010 and 2011, years after any plea agreement was done. Well, let me ask you a question. To the extent that that is accurate, then how do they enforce the welding regulations? The welding regulations? I think those are incompatible with, number one, are they incompatible with the statute under your argument? And number two, how do you enforce them? No, Your Honor, Chief Jones, the welding regulations... I'm not chief. I'm sorry, Judge Jones. That's okay. I'd do that if I had it. I apologize. I apologize to the other members of the panel. Judge Jones, what I was trying to say is this. The welding operations, if you're talking about 113 under the regs, that is subject to the definition of you, as Judge Clement noted at the early part of the argument. And that is what Bessie decided would be the definitional section for you. It's not just for that provision, 113, Judge Jones, it's for hundreds of regulations that all use you. But let me just say, everybody understands that if you take this argument about 1334 and 1348, everybody understands that the lessee and the operator of a lease, and even the operator, I might add, are not normally the ones who are the roughnecks on the platform doing these kinds of activities. And they're all contracted out. So I ask you again, is Black Elk going to jail for this? Well, Judge Jones, again, this is, as Judge Elrod reminded all of us, this is a little bit outside the record, but Black Elk's already entered a plea agreement, as Ms. Greenfield will tell you, and they're going to be pleading guilty in the next week. That's outside the record. That's not my concern. But to answer your question directly, it is relevant because Black Elk was the permittee, was the operator of that platform. That's where the buck stops. It does not go down to the contractors who are outside the scope of the statute and the regulations, Judge Jones, who had no notice until this indictment was brought. Well, to what extent does it comport with our criminal law to hold the leaseholder criminally liable for what may be negligence or gross negligence on the part of one of its subcontractors? In other words, if the statute only applies to the operator and leaseholder and 1348 only applies to the operator and leaseholder. Judge Jones, all I can say is that was a decision made by Congress. Congress decided to make the holder of the lease or holder of the permit accountable for the operations of the contractor. Indeed, Bessie even said that in the prefatory statement to Section 146. They said, we're going to hold the, excuse me, the holder of the permit or the holder of the lease accountable for the contractor's failings if that occurred. That's a decision made by Congress. And what the executive branch now wants to do, what DOJ wants to do, is supplant that decision by Congress. There's a structure there for, I didn't mean to interrupt you, Judge Jones, I was just trying to spit out, there's a structure there in the regulations, particularly in the context of the definition of U. And those welding provisions, welding regulations, fall within that structure under 105, which defines U. It does not include contractors. Congress could have made that decision or the regulators could have made that decision. Both of them chose not to. Now, what do you do with the joint and several liability section? Well, there's a joint and several liability section, but there are a couple of responses to that, if you permit me. One, that section, as you noted, does not impose criminal liability. It's normally for civil liability, number one. Number two, I've never seen a joint and several provision for criminal liability. But number three, even if you interpret it as allowing criminal prosecution, it is ultra-virus because it goes beyond the statute. The regulation under 146 goes far beyond the statute. Number four, if you interpret 146 now to say that it could be used to prosecute contractors, then it was never subject to the Administrative Procedure Act. And as you know, under Perez, the Supreme Court has said you cannot have a situation that adversely affects someone unless there's compliance, public notice, a hearing, rulemaking under the APA. And so there are a host of reasons why 146 is just not applicable, putting aside the absence of notice that you mentioned a moment ago, Judge Jones, that 146 cannot be used as the government now wants to twist and turn it into a basis for a criminal prosecution. If I could just tell the panel a few points and ask them to consider these, because I know it's a de novo consideration. The government repeatedly says that it knows what interior meant. It has sort of a telepathic ability to travel, as Judge Easterbrook said, in another opinion. It has an ability to divine what Congress meant years ago. It has an ability to understand what the Department of Interior meant two decades ago. And compounding that, if you accept all that, that DOJ has that ability, it then says, well, wait a minute, the Department of Interior may have committed legal error. It may have been overly cautious. There are misunderstandings within the Department of Interior. There's conflicts between the two agencies within the Department of Interior as to whether contractors can be held accountable. And yet, it wants to say, despite all that confusion, despite all that misunderstanding, despite the bad legal advice the Department of Interior is putting out there, that the contractors should have fair warning and clear notice as to what's expected of them. And respectfully, we would submit to Your Honors, that just simply cannot occur. That is the antithesis of fair notice to contractors. It's the opposite of a fair warning as to the due process require, as due process requires, consistent with the 14th Amendment. Can you help me with the practical problem? It's related to the question Judge Jones was asking earlier. Are you saying that the owner has to make sure that the welding protocols are followed correctly? I mean, we have lots of cases where people say the owner's not responsible because they weren't micromanaging the protocols of the subcontractor. In fact, we have other cases this week that deal with some of those issues. So, in the civil context, so why would, in the criminal context, it be responsible for the, and that's the only person responsible? I understand the statutory text arguments, but as a practical matter, can you help me get comfortable with your position? Sure, because, Judge Girod, as a practical matter, as members of this panel know, the owner or the, the owner or the permittee or the lessee, depending upon which name you want to provide them, has the ultimate control over the operations of the platform. Congress recognized that. Congress made that decision, and it considered it. Frankly, that's important for this Court to understand. Congress understood that it could, and considered a broader definition of OXLA, and then it restricted it, as the panel knows. Bessie considered a broader application of what is the term U, and it restricted it to the operators, to the owners, the lessees, and the designated agents. And, in fact, I think it's telling that the Department of Justice, in the indictment, actually called all of the defendants designated agents when they knew better, and then they had to withdraw it and concede they were wrong, because they recognized themselves that to be under the act or to be under the regs, you had to be designated. And none of these defendants were designated. For the same reason, going back to a comment that Judge Jones made on Section 1334, if 1334 was the panacea for the government's indictment of these defendants, then one must ask, why wasn't it mentioned once, once, in the indictment? It was never mentioned. Instead, what the government has done is it focused on U, as Judge Clement mentioned at the beginning. It spent two pages on the definition of U, which does not include these defendants, and it talks about 1348 only one time, and that's in the context of a lessee. And it talks about 1348. So the government knows better. The government is just trying to stretch this for the very first time without any notice to any of these defendants in violation of the Fourteenth Amendment. And just lastly, we'd ask the Court, because we know you've considered it in other decisions, that if there's any doubt, if there's reasonable doubt, as Justice Scalia has said, then the rule of lenity applies. And these defendants get the benefit of the rule of lenity. We're not saying that the Court needs to get to the constitutional issues or needs to get to the rule of lenity, even though the district court said it would apply, she would apply the rule of lenity if the statutory language did not accept all of the government's sort of twisted arguments that have been provided so far in briefs in an oral argument, then the rule of lenity still gets you to the same result we respectfully submit. So for those reasons, Your Honors, we would ask the Court to affirm the district court's ruling. It's consistent with the statutory language. It's consistent with the legislative history, although we don't believe you have to get into the legislative history. But it's certainly consistent with their own regulations, and it's even consistent with their own pronouncements that they've made time and time again after the so-called one incident of a plea agreement. My time is up. Thank you, Your Honors, for your patience. Okay. Thank you. Interesting socks, Mr. Rosenberg. Interesting socks. May it please the Court. I'm Court-appointed counsel for Don Moss, who's involved in this case, and I ask for three minutes to make a couple of important points. Mr. Moss was indicted on three actual violations in this case, and we obviously agree with Mr. Rosenberg that the district court properly act to dismiss the defendants, the contractors, in this case. I would really like to point out to the Court Don Moss's status, because he kind of falls into the hypothetical I think Judge Jones spoke about a little bit earlier. Don Moss was an independent contractor to Compass, which was a contractor to Black Elk. In other words, he's twice removed from this platform in terms of being a contractor. I think it's an important point. So with regard to the analysis on him, he does not fall within the 2 under 105. He's clearly not there, and he wasn't, as mentioned earlier, designated by anyone to be an agent. He also is not under 113 as a welder, welding supervisor, or person in charge. So he's under neither one of these statutes. So in this particular regard, Moss's job on the platform, well, he was a consultant who coordinated and reported to Black Elk on construction and finances. So he's a consultant. So, Your Honors, what I would submit, I would urge the Court to affirm the district court's ruling, use the plain reading of the regulations, use statutory construction rules and the rule of lenity to find that these regulations don't apply to the contractors. Otherwise, I would submit, hundreds of contractors that are out there, like Don Moss, are going to find themselves liable under OAKSLA without any fair notice or due process. Thank you. All right. Thank you. Okay. Ms. Greenfield? Yes. Judge Jones, the welding regulation is not incompatible with the statute. Again, as we've been through, section 1334A with Interior's authority is broad. 25146C does not go beyond the statute. To require compliance from an additional person who is doing the work does not offend the statute. And 25146C, again, this joint and several responsibility regulation, was promulgated through notice and comment rulemaking. It was not a surprise. Does anything about that say a word about criminal liability? No, because the criminal liability derives from the, as Judge Clement says, any person who knowingly and violates any regulation, and that derives from the statute. I just said that you said it. I didn't say that I believed it. My apologies. But also, I think that the, and that 25146C, in terms of the indictment, it's in every account that these defendants are in. It is alleged going hand in hand. But there's at least five reasons, one of which we'll get to, Judge Elrod, your point about the implicit repeal on page 17 of our reply. Five reasons why section 1348B does not constrain Interior from taking enforcement action against others when they violate the regulations. The plain text of section 1348B does not say that lessees are the only ones who Interior could require to comply with the regulation. 1334B says lessees have to maintain all their operations in compliance with the regulations, not that no one else has a duty to comply. The text of the criminal statute in 1350C does not say duty holders under 1348 or any person who fails to perform their duties under 1348 may be prosecuted. The text says any person who violates any regulation designed to protect health, safety, environment, and conserve natural resources may be prosecuted. 1348 is not the source of Interior's authority to write health, safety, environmental regulations related to operations. You just told me, now wait a minute, in your principal argument, you just told me 1348 was because Judge Dougherty overlooked a section of it. No, no, 1334. 1344 is the authority. That is the authority to write it. 1348, that enforcement provision that the defendants have wanted to pick out and shield them from any liability for anything is not the source. So what does 1348 mean? It's then superfluous if 1350 does all the business of that. No, 1348... What does it do? It establishes that lessees must ensure their operations are compliant, but if Interior is requiring compliance from others in addition to the lessees and permit holders, then 1350 is going to establish the liability for all of those. Just as you're... Give me an example of anybody... So you're saying, let's say that a contractor leaves trash on the platform and the trash falls into the Gulf of Mexico and that's not in compliance with the Clean Water Act or something. Then you're saying that the scope of 1334 is broad enough to put all the people in that contractor in jail. Is that right? No. Of course it is. That is not... No. Well, yeah, because you're saying that the Secretary has limitless regulatory authority to, under one of these other provisions here, to provide for the environmental and conservation laws and regulations under 1334, and any person under 1350 who violates it can go to jail. So if they throw cook cans off the platform, they can all go to jail, right? If they are violating a regulation for the work that they do, then lessees and the contractors... That would violate, if that violates the Clean Water Act, they're violating a regulation, right? Well, it's not a regulation under OXLA, but... Of course it is. I want to make sure that we get to the implicit repeal. Regarding 1348B, to restrict anyone else from having to comply with regulations governing the work they would do would be tantamount to that implicit appeal we were discussing. But opposing counsel said it's not an implicit repeal, that it's true, that they just didn't have that at the time. Since 1953, Interior has had the ability to write regulations in 1350C, that criminal any person provision, has also been in there since 1953. The fact that Congress would write a statute that could never be enforced until 1978, when 1348 came around, would not be correct. But if really the duty is through the broad 1334 provision, then why is that not in the indictment? If that's where the duty really comes from? No, that's the statutory... The authority to do those broad things. Right, regulations. Right. Regulations related to... But there's no duty in the relevant provision doesn't impose a duty on the person that you're trying to impose criminal liability on. And then it's only in the penalties in the 1350. So where does it come from, the duty? The regulation and the joint and several responsibility that Interior has put upon those that are actually doing the work. Again, the criminal law holds those that commit the offense responsible. And a decision by this court that prevents holding these defendants responsible, when the plain language of the statute and the regulations dictates otherwise, would actually do a disservice, an injustice to Congress's directive. But isn't what really happened if there was a view that they were designated agents and then somebody went and looked and checked and realized they really weren't? Isn't that what really happened? No. 250.146C, the joint and several responsibility provision for the regulations... You can... ...has been in every count of our entire... You can go back to your office and find me a single criminal case that talks about joint and several liability and you may feel free to put it in a 28-J letter. Otherwise, you've done a great argument, but you got to make concessions where they're accurate. And again... I know the government wants the indictments to be upheld and reverse the district court. Yes. Thank you. Thank you.